**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**UNITED STATES OF AMERICA**

    **Plaintiff,**

v.                                                           Case No. 8:16-cr-531-T-30TBM

**KIRBY GANT**

    **Defendant.**
_____/

## **REPORT AND RECOMMENDATION**

    THIS CAUSE is before the Court on referral for a Report and Recommendation on **Defendant's Motion to Suppress** (Doc. 23) and the Government's response in opposition (Doc. 27). An evidentiary hearing was conducted August 30, 2017.

    Defendant stands indicted on three counts for possession with intent to distribute crack cocaine, possession of a firearm in furtherance of a drug trafficking crime, and felon in possession of a firearm. (*See* Doc. 1).

    By the instant motion, he seeks to suppress the marijuana, hydrocodone pills, and cash taken from his person, along with a firearm and crack cocaine seized from the vehicle in which he was found sitting in the early-morning hours of December 5, 2016, in Bradenton, Florida. He variously argues that his arrest was the product of an illegal *Terry* stop based on a mere hunch; the plain view doctrine does not apply because the incriminating nature of the gun was not readily apparent; the warrantless search of the vehicle cannot be justified as a search incident to an arrest because he was secured in handcuffs and could not reach the passenger compartment when the search was conducted and the vehicle could not have

contained evidence of the crime for which Defendant was arrested (battery on a law enforcement officer); and the search was conducted on private property and the police had no license to be on the same in order to conduct a search. (Doc. 23).

The Government maintains that the initial encounter, the arrest, and the warrantless searches and seizures were all lawful. It further maintains that these event occurred in the parking lot of a Bradenton Housing Authority property on which the police had every right to be. (Doc. 27).

For reasons more thoroughly explained herein, I recommend the motion be **DENIED**.

**I.**

Evidence introduced at the hearing establishes that the Bradenton Police Officers Christopher Capdarest ("Capdarest") and Bryan Stay ("Stay") (collectively herein the "Officers"), along with three others, were on patrol on December 5, 2016, and "walking the beat" at about 3:48 a.m. in the area of the 300 block of 12th Avenue West in Bradenton. The Officers described this area as a high crime area known for drug activity. Defendant disputes this characterization and offers what purports to be statistical information from the Manatee County Sheriff's Office, which Defendant contends shows this area to be a low crime area. *See* Def. Ex. 1. Capdarest testified they were wearing their patrol uniforms and, while walking down 4th Street, the Officers observed a green SUV in the parking lot area of a Bradenton Housing Authority apartment complex.[1]

---

[1]*See* Gov't Ex. 1, 2A, 2C and 2E, photos which depict the area. Ex. 1A depicts an ariel view of this location. These events occurred in the rear paved area of the apartments depicted in Ex. 2A. According to the Officers, the SUV was parked in the same area as the black vehicle depicted in Exs. 2C and 2E.

Defendant also disputes the location of the vehicle and maintains that the property is actually private property and the property where the police say he was located was actually owned by New Singletary Limited Partners.[2]

The Officers observed that the driver's door was open and the interior lights to the vehicle were on. The Officers did not observe any criminal conduct, but they approached the vehicle nonetheless to determine what was going on. Capdarest went to the driver's door and Stay went to the passenger door. The vehicle's engine was not on.

Capdarest testified that he said, "Hey bud" towards the occupant. Very shortly thereafter he heard Stay yell, "Gun." Defendant then came out of the open door and pushed Capdarest with his fists and chest in an apparent effort to flee. Capdarest grabbed Defendant's wrists, they fell to the ground and, after a short struggle, Defendant was handcuffed and searched. Defendant was advised that he was under arrest for battery on a law enforcement officer. According to Capdarest, all of this happened within fifteen or twenty seconds. The search revealed a small amount of marijuana and a bag of hydrocodone pills, along with more than $1,100 in cash in a jacket pocket. Capdarest took Defendant to the rear of the vehicle and when a cruiser was brought forward Defendant was placed in the rear of the cruiser.

Stay testified that he approached the passenger side door of the vehicle and in plain view in a cupholder he saw a firearm. He yelled out loudly "gun." Defendant exited the vehicle, and he and Capdarest began to struggle. Stay ran around the vehicle to assist Capdarest and shortly thereafter Defendant was handcuffed. Stay then went to search the

---

[2]In his motion, Defendant claimed the vehicle was in a lot next to this parking area, which was also private property.

vehicle. He claims that before entering it, he observed a plastic bag with what he suspected as crack cocaine underneath the firearm. He entered the vehicle and seized both the firearm and suspected crack cocaine.

Both Capdarest and Stay concede that they were not acting on a tip of criminal activity in this area, nor did they observe Defendant commit any crime before they confronted him. There were no other persons in the area. At least up to the point where Defendant stepped out of the vehicle and into Capdarest, the Officers claim he was free to leave. Both officers maintain that the property where this occurred is part of the Bradenton Housing Authority public housing.

Defendant was not the registered owner of the vehicle, which was registered to one Chauncey Kennon. An effort was made to contact Ms. Kennon without success. According to standard operating procedures, the Officers arranged to have the vehicle towed to a tow yard. As further part of the procedures, an inventory search was conducted of the contents within the vehicle.

As noted above, Defendant contends that the Officers entered onto private property where they encountered Defendant inside the vehicle. In proof, Defendant presents the testimony of Ms. Lander-Faul, a private investigator who searched public records in Manatee County and determined that the particular property at 310 West 12th Street in Bradenton is owned by New Singletary Limited Partnership as opposed to the Bradenton Housing Authority. *See* Def. Ex 3. Interestingly, the address reflected in the public records for the Bradenton Housing Authority and the address listed for New Singletary Limited Partnership are the same address in Washington, D.C.

4

**II.**

**A.**

The Fourth Amendment provides, "the right of the people to be secure in their persons, house, papers, and effects, against unreasonable searches and seizures, shall not be violated." Defendant urges the initial encounter with the police was a *Terry* stop and thus implicated the Fourth Amendment.[3] And, whereas such a stop requires the police have a reasonable suspicion that the suspect has been or is about to be involved in a crime, he claims the Officers had no reasonable suspicion of any criminal activity before approaching and detaining him. The Government argues this was a mere voluntary encounter.

I find no Fourth Amendment violation in the Officers approaching this vehicle in the early-morning hours of December 5, 2016. Defendant's claim that his arrest was the result of an improper *Terry* stop is without merit on this record. The factual issue in this initial encounter is whether Defendant was stopped (and thus "seized" for Fourth Amendment purposes) by the Officers when they approached and Officer Capdarest attempted to speak with him. On the facts presented, I find that he was not.

A seizure occurs only when an officer by means of physical force or show of authority restrains the liberty of a citizen. *United States v. Mendenhall*, 446 U.S. 544, 552 (1980) (citing *Terry,* 392 U.S. at 19, n.16). Not every personal intercourse between policemen and citizens involves a seizure in contemplation of the Fourth Amendment. "[T]here is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the street.... As long as the person to whom questions are put remains free to disregard the

---

[3]*See Terry v. Ohio*, 392 U.S. 1 (1968).

questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." *Id.* at 553–54; *see also United States v. Franklin*, 323 F.3d 1298, 1301 (11th Cir. 2003).

While Defendant unquestionably possessed a constitutional right to his personal security during the early-morning hours of December 5, 2016, he was not subjected to a stop when initially encountered. There is nothing that prevents an officer or any other citizen from approaching another individual in the fashion that was done here. While the Officers had received no tips of criminal activity, nor did they have reasonable suspicion of criminal activity when they approached the SUV, no such knowledge was necessary to justify their approaching the SUV and speaking to Defendant.

The facts here are distinguishable from those in *Terry* and *McLoud v. State*, 491 So. 2d 1164 (Fla. Dist. Ct. App. 1986), upon which Defendant relies. There was no stop of Defendant and nothing amounting to a seizure of his person implicating the Fourth Amendment in the initial encounter. The claim that his arrest was the fruit of an illegal stop is thus unsupported.

Furthermore, I find no constitutional violation in the Officers observing the interior of the SUV from their positions outside the vehicle. By the unrefuted testimony of Stay, from his vantage point he immediately recognized a firearm in the cupholder and yelled "gun" to alert the other officers. Moreover, the Officers testified that at least until he attempted to bowl over Capdarest, Defendant was free to leave. There is no Fourth Amendment violation in this activity either.

The first encounter implicating the Fourth Amendment occurred when the Defendant exited the driver's door in an apparent effort to escape the police. By the testimony, not refuted by Defendant, almost immediately upon Stay yelling "gun," Defendant exited the vehicle striking Capdarest in the chest. Defendant was then grabbed by the Officer and taken to the ground. After a short struggle, the Officers were able to handcuff Defendant. At that point, Defendant was arrested for battery on a law enforcement officer and, according to Capdarest, so advised. Defendant makes no argument that such arrest was not supported by probable cause if Capdarest is to be believed. And, by the Officer's account, it was. It follows then that the warrantless search of Defendant's person was entirely justifiable as a search incident to a valid arrest. *See Chimel v. California*, 395 U.S. 752, 763 (1969) ("When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or to effect his escape.... In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction."). The marijuana, pills, and cash seized from Defendant upon his arrest was lawfully seized, and the motion should be denied as to that evidence.

**B.**

As for the warrantless search of the SUV and the seizure of the firearm and plastic bag containing crack cocaine, Defendant claims that neither the search incident to arrest exception nor the plain-view doctrine applies in these facts. He argues first there was no valid search incident to an arrest under *Gant v. Arizona* because at the time of the search Defendant was constrained away from the vehicle and there was no cause to believe the vehicle contained

evidence of the crime for which he was arrested. Second, he asserts the search cannot be justified under the plain-view doctrine because the mere presence of a gun was not inherently incriminating and even if Stay was lawfully in a place where he had a right to be when he saw the gun, the incriminating character of the gun was not such that he could enter the vehicle and seize it. And, he claims the Officers were trespassing on private property without license, probable cause, or reasonable suspicion for purposes of conducting the illegal search and thus cannot rely on the plain-view doctrine, and they had no right to access the vehicle in the circumstances. Finally, Defendant argues that the automobile exception does not apply because the Officers had no probable cause to believe the vehicle contained contraband. The Government seeks to justify the search as a search incident to Defendant's arrest under the plain view doctrine and/or the *Carroll* doctrine.

Addressing the argument that the Officers were trespassing on private property first, the facts do not convincingly support this contention and in any event appears to me to be of little legal significance in the given circumstances. The Officers testified that, based on their experience from working in this area, the vehicle was located on property that belonged to or was part of the Bradenton Housing Authority and was thus public property on which they were free to travel.[4] Defendant argues that if the vehicle was located as claimed by the Officers, Manatee County public records show the property was owned by New Singletary Limited Partnership, not the Housing Authority. Without additional evidence, Defendant

---

[4]In his motion, Defendant argues that these events occurred on a lot next to the drive where the police say it occurred and that this lot was also private property. *See* Gov't Ex. 1. The Officers' testimony as to where this search occurred is unrefuted on this record. Thus, I find the vehicle was parked on the ingress/egress portion of the parking lot at the rear of the apartments as testified to by the Officers.

urges this establishes the property was privately owned and therefor the Officers had no right or license to enter the property as they did.

Based on the Officers' unrefuted testimony, the vehicle was located in the rear parking lot area of the public housing apartment complex on a portion used for ingress and egress. Arguably, there is an implied license to use this portion of the driveway for lawful purposes. While the property was owned by the New Singletary Limited Partnership, I find the record inconclusive as to the relationship between the public housing authority and the New Singletary Limited Partnership property. Both entities maintain the same mailing address in Washington, D.C., which leads me to conclude they are related in some fashion. The relationship was not adequately developed. As such, the preponderance of the evidence indicates this location was part of a public housing complex and accessible by the public for lawful purposes.

Ultimately, I find that even if the property was privately owned, Defendant has no right to complain about such because the actions of the Officers is not shown to have infringed any property interest or Fourth Amendment right of Defendant's.[5] It would appear that if the Officers were trespassing as alleged, so was Defendant. In the circumstances, Defendant has

---

[5] Where Defendant lived at the time is disputed on this record, but there is no claim or showing that he lived at this address.

no standing to assert his rights were violated by the Officers' entry onto this property even if that entry constituted a trespass of a third party's property interests.[6]

I also conclude the search of the passenger compartment and seizure of the firearm and crack cocaine was justified under the plain-view doctrine and the *Carroll* doctrine. Under the plain-view doctrine, if police are lawfully in a position from which they view an object, the object's incriminating character is immediately apparent, and the officer has a lawful right to access the object, he may seize it without a warrant. *Horton v. California*, 496 U.S. 128 (1990); *United States v. Smith*, 459 F.3d 1276, 1291 (11th Cir. 2006).

Under the automobile exception or so-called *Carroll* doctrine, when a vehicle is being used on the highways, or if it is readily capable of such use, and the police have probable cause to believe it contains contraband or evidence of a crime, they may enter and search the vehicle without a warrant. *United States v. Carroll*, 267 U.S. 132 (1925); *see also Chambers v. Maroney,* 399 U.S. 1970 (1970); *California v. Carney*, 471 U.S. 386 (1985); *United States*

---

[6]A defendant has "standing" to challenge a warrantless search if the defendant had a "legitimate expectation of privacy" in the property when it was searched. *See Rakas v. Illinois*, 439 U.S. 128, 143 (1978). An individual's standing to challenge a government intrusion or search is assessed by the totality of the circumstances and on a case-by-case basis. "While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, property rights are neither the beginning nor the end of ... [the] inquiry." *United States v. Salvucci,* 448 U.S. 83, 92 (1980) (citation omitted). "Other factors to be weighed include whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises." *United States v. Pitt,* 717 F.2d 1334, 1337 (11th Cir. 1983) (quoting *United States v. Haydel,* 649 F.2d 1152, 1154-55 (5th Cir. Unit A, Jul. 8, 1981). Even assuming another's property interests were trespassed, Defendant has demonstrated no right to complain about the same.

*v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007). Thus, "[i[f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996).

I have determined Stay was lawfully in a position from which to view the inside of the vehicle and from that location he initially observed a firearm in a cupholder between the seats. By his unrefuted testimony, when Defendant was subdued, Stay went to search the vehicle and before entering he saw a plastic bag containing suspected crack cocaine. While the incriminating nature of the firearm may not have been immediately apparent when it was initially observed, Stay's observation of the crack cocaine and the firearm upon a second look subsequent to Defendant's arrest supports a finding that the vehicle contained contraband and evidence of a crime. At this point in the confrontation, the Officers had evidence that Defendant was dealing drugs, that there were more drugs in the vehicle, and the possession of a firearm in furtherance of such activity was likely a crime.[7]

Even if the plain-view doctrine would not allow for entry into the vehicle without a warrant, the Officers were possessed of probable cause to believe the vehicle contained additional contraband and Stay's entry and seizure of the firearm and crack cocaine was justified under the automobile exception to the warrant requirement.

---

[7]In these circumstances, if for no other reason than officer safety, I find that entry into the vehicle to seize the firearm was entirely reasonable and justified.

For these reasons, I conclude that neither the firearm nor the crack cocaine were seized in violation of the Fourth Amendment, and the motion should be denied as to these items as well.[8]

On this conclusion, I find it unnecessary to address in detail the search incident to arrest argument made by defense counsel[9] or the Government's argument that even if the search was illegal, the firearm and crack cocaine would inevitably been discovered during the routine inventory search conducted in connection with the towing of the vehicle to a tow-yard for safekeeping.[10]

---

[8] It appears from the police report that a small, additional amount of cocaine was found in the door of the vehicle by another officer. Def. Ex. 2. The seizure of those drugs was not illegal either. *See United States v. Baldwin,* 774 F.3d 711, 720 (11th Cir. 2014 (citing *Wyoming v. Houghton,* 526 U.S. 295, 301 (1999)).

[9] In *Arizona v. Gant*, 556 U.S. 332 (2009), the Supreme Court reset the law on vehicle searches incident to a recent occupant's arrest. Recognizing that its decisions had strayed far from the rationale announce in *Chimel* for the search incident to arrest exception to the warrant requirement, the Court announced the rule that "the *Chimel* rationale authorizes police to search a vehicle incident to a lawful arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." Moreover, "circumstances unique to the vehicle context justify a search incident to the arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Gant*, 556 U.S. at 342.

By Defendant's argument, the search was not a lawful search incident to his arrest. Upon a strict reading of *Gant*, Defendant has the better of the argument, and, if called upon to do so, I would find the Officers cannot justify the search of the vehicle under this exception to the warrant requirement.

[10] Capdarest testified that a check of the vehicle's registration showed that it was registered to Chauncey Kennon, not Defendant. When dispatch was unable to reach Ms. Kennon, the vehicle was towed to a tow yard in accordance with the department's standard operating procedure. In accordance with those procedures, an inventory search of the vehicle was performed. Inventory searches conducted in accordance with standard operating procedures adopted by law enforcement agencies are reasonable under the Fourth Amendment and, in the absence of bad faith on the officer's part, evidence obtained in such searches is lawfully seized despite the lack of warrant. *See South Dakota v. Opperman*, 428 U.S. 364 (1976); *Colorado v. Bertine*, 479 U.S. 367 (1987).

**III.**

For the foregoing reasons, I **RECOMMEND** that **Defendant's Motion to Suppress** (Doc. 23) be **DENIED**.

Respectfully submitted this
6th day of September 2017.

*/s/ Thomas B. McCoun III*
THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE TO PARTIES</u>**

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies furnished to:
The Honorable James S. Moody, United States District Judge
Counsel for the parties